UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LATONYA SMITH,

    Plaintiff,

v.                                      CASE NO. 3:18-cv-91-J-32JBT

PARAMOUNT ALF, INC., etc.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on the parties' First Amended Joint Motion to Approve FLSA Settlement Agreement ("Motion") (Doc. 19). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 16.) The undersigned heard oral argument on the Motion on May 16, 2018. For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED**, the Settlement Agreement ("Agreement") (Doc. 19-1) be **APPROVED**, and this action be **DISMISSED with prejudice**.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

**I.     Background**

Plaintiff filed the instant action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), bringing claims for unpaid overtime compensation and retaliation. (Doc. 1.) Plaintiff alleged that she was employed by Defendant as a caregiver and medical technician, and that she worked in excess of forty hours per week at various times during her employment. (*Id.* at 3–4.) Plaintiff further alleged that Defendant failed to pay her one and one-half times her regular rate of pay for the overtime hours she worked, in violation of the FLSA. (*Id.*) Plaintiff also alleged that she was unlawfully terminated in retaliation for objecting to Defendant's failure to pay her overtime wages. (*Id.* at 5.) Plaintiff sought compensation for all unpaid overtime hours worked, liquidated damages, compensation for lost wages and benefits, compensatory damages, including for emotional distress, prejudgment interest, and attorney's fees and costs. (*Id.* at 4–5.)

The parties initially requested that the Court approve a settlement agreement providing that Plaintiff would receive $5,000 for unpaid wages and any other damages, and that Plaintiff's counsel would receive $5,000 for attorney's fees and costs. (Docs. 17 & 17-1.) Although not entirely clear, it appeared that the initial agreement, which included a general release and a confidentiality provision, encompassed both of Plaintiff's claims. (*Id.*) The initial motion was denied without prejudice for several reasons, and the parties were instructed to, among other things, remove "any references to confidentiality, non-disparagement, or non-

solicitation . . . from the parties' revised settlement agreement." (Doc. 18 at 3.)

The parties then filed the instant Motion, which seeks approval of the settlement of only Plaintiff's wage claim. (Doc. 19.) The instant Agreement, which no longer contains the objectionable provisions, is substantially different from the first agreement. (Doc. 19-1.) Most notably, the Agreement provides that Plaintiff will now receive $3,000 for unpaid wages, $1,000 for liquidated damages, and that Plaintiff's counsel will receive $1,000 for attorney's fees and costs. (*Id.*) However, aside from indicating that Plaintiff's retaliation claim was settled pursuant to a separate confidential agreement, the parties failed to address why there were substantial differences between the first agreement and the instant Agreement. Therefore, the undersigned held oral argument on the Motion so that the parties could address this issue.

**II.   Standard**

Section 216(b) of the FLSA provides in part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b).

"[I]n the context of suits brought directly by employees against their employer

under section 216(b) . . . the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Judicial review is required because the FLSA was meant to protect employees from substandard wages and oppressive working hours, and to prohibit the contracting away of these rights.  *Id.* at 1352.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," the district court is allowed "to approve the settlement in order to promote the policy of encouraging settlement of litigation."  *Id.* at 1354.  In short, the settlement must represent "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id.* at 1355.  In addition, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."  *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).[2]

In *Bonetti v. Embarq Management Co.*, the court analyzed its role in determining the fairness of a proposed settlement under the FLSA, and concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2)

---

[2] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

> makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Other cases from this district have indicated that when attorneys' fees are negotiated separately from the payment to a plaintiff, "an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *King v. My Online Neighborhood, Inc.*, Case No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007).

### III. Analysis

As noted above, the Agreement provides that Defendant will pay a total of $5,000 to Plaintiff and her attorney, which includes $3,000 for unpaid wages and $1,000 for liquidated damages payable to Plaintiff, and $1,000 for attorney's fees and costs payable to Plaintiff's counsel. (Doc. 19-1 at 2.) The parties represent that Plaintiff's attorney's fees and costs were agreed upon separately and without regard to the amount paid to Plaintiff. (Doc. 19 at 3.)

According to the Motion, Plaintiff initially contended that she was owed

5

$7,402.50 in unpaid overtime wages, excluding liquidated damages, over a period of three years.  (*Id.* at 1.)  However, Plaintiff later learned that Defendant purchased the business for which Plaintiff worked during that time period.  (*Id.*)  Because Defendant did not own the business for the entire period at issue, Plaintiff reduced her claim for estimated unpaid overtime wages to approximately $3,000, excluding liquidated damages.  (*Id.*)  Defendant maintained that its business records demonstrate that Plaintiff was paid all overtime wages due. (*Id.*)  Plaintiff contended that Defendant's records were not accurate and that she worked off the clock.  (*Id.*)  In order to avoid the costs, time, and uncertainty associated with litigation, the parties agreed to resolve their bona fide disputes.  (*Id.* at 2.)

At oral argument, the undersigned questioned the parties as to why a new agreement setting forth different amounts to be paid to Plaintiff and her attorney was filed with the instant Motion.  The parties stated that the initial agreement encompassed both of Plaintiff's claims.  However, Defendant would not agree to settle Plaintiff's claims without a general release and confidentiality provision. Therefore, when the parties were instructed to remove the confidentiality provision from the initial agreement, they entered into two separate agreements because Court approval was required only for the wage claim.  This allowed the parties to include the general release and confidentiality provision in the separate agreement settling Plaintiff's retaliation claim.  However, the parties recognize that the Agreement settling the wage claim is public record, and therefore not subject to

6

confidentiality.

Regarding the amounts to be paid to Plaintiff and her attorney, the parties indicated that Plaintiff is still receiving a total of $5,000 for both claims, and that Plaintiff's counsel is still receiving a total of $5,000 for attorney's fees and costs for both claims. Thus, Plaintiff is receiving $4,000 for her wage claim and $1,000 for her retaliation claim, and her counsel is receiving $1,000 for fees and costs for the wage claim and $4,000 for fees and costs for the retaliation claim. The allocation of these amounts was based on the parties' assessment of the strength of each claim, about which they disagreed.

The allocation of damages and fees between the two claims is subject to reasonable dispute. However, whether the settlement amounts are viewed as the parties have allocated them, or combined, the undersigned recommends that the settlement represents "a fair and reasonable resolution of a bona fide dispute" over provisions of the FLSA. *See Lynn's Food*, 679 F.2d at 1355. Specifically, Plaintiff acknowledged that she was owed only approximately $3,000 in overtime wages during the time Defendant owned the subject business, and that it would have been difficult to recover more than that from Defendant, or to dispute Defendant's records. Moreover, Plaintiff is represented by an attorney. Thus, the undersigned recommends that the settlement reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at 1354.

Additionally, "[s]ettlement of FLSA retaliation claims (or of non-FLSA claims, for that matter) need not be approved by the district court, provided its terms do not serve to contaminate the Agreement as to the FLSA claim." *Jemley v. Umbwa, Inc.*, Case No. 6:15-cv-801-Orl-41TBS, 2017 WL 2954645, at *2 (M.D. Fla. June 8, 2017) (quotations omitted) Report and Recommendation adopted, 2017 WL 2930910. Based on the representations of the parties set forth above, the undersigned recommends that the separate settlement of Plaintiff's retaliation claim did not contaminate the Agreement.

Regarding fees and costs, the ultimate issues pursuant to *Silva* are "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers." 307 F. App'x at 351. Moreover, the Court need not conduct an in-depth analysis of the reasonableness of the attorney's fees and costs if the proposed settlement appears reasonable on its face and there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of attorney's fees and costs to be paid to his counsel. *See King*, 2007 WL 737575, at *4.

As noted above, Plaintiff's attorney's fees and costs were agreed upon separately and without regard to the amount paid to Plaintiff. (Doc. 19 at 3.) Additionally, there is no reason to believe Plaintiff's recovery was adversely affected by the agreed-upon fees and costs. The Motion states that Plaintiff's counsel spent a total of 15 hours, which are not divided by claim, on Plaintiff's case and incurred

8

costs totaling $475. (*Id.*) Under the Agreement, Plaintiff's attorney will recover a total of only $1,000 for fees and costs. (Doc. 19-1 at 2.) However, because Plaintiff's attorney did not allocate the 15 hours between the two claims, the undersigned recommends that his recovery of $5,000 in total fees and costs for the entire 15 hours, which results in an effective hourly rate of approximately $301.67 ($5,000 in total fees and costs - $475 in total costs = $4,525 in total fees / 15 total hours), is reasonable.[3] Additionally, it appears that counsel is being adequately compensated for his work. Thus, both aspects of the *Silva* attorney's fee inquiry are satisfied.[4]

Therefore, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 19**) be **GRANTED**.

2. The Settlement Agreement (**Doc. 19-1**) be **APPROVED**.

3. This action be **DISMISSED with prejudice**.

4. The Clerk of Court be directed to terminate any pending motions and close the file.

---

[3] The undersigned is not accepting as reasonable Plaintiff's counsel's listed hourly rate of $450. However, the Court need not address this rate because the effective hourly rate is $301.67.

[4] Since the undersigned is not conducting an in-depth analysis of the reasonableness of the fees and costs, this case provides no precedent for a case in which such an analysis is required.

**DONE AND ENTERED** at Jacksonville, Florida, on May 25, 2018.

*Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record